*865 OPINION OF THE COURT
Margaret A. Chan, J.
Petitioner Bike New York, Inc. moves pursuant to CPLR article 78 to annul respondents New York City Police Department and Office of Citywide Event Coordination and Management’s determination classifying petitioner’s TD Five Boro Bike Tour a “Non-Charitable Athletic Parade” and imposing a fee of $967,534 to cover 100% of the estimated traffic control costs.
Petitioner has scheduled its 36th Annual TD Five Boro Bike Tour for May 5, 2013, where it expects 32,000 participants to cycle 40 miles through the five boroughs of New York City. The cost of participation per cyclist is $86, which covers the administrative costs with the net proceeds going to fund the organization. In its application for a parade permit for the bike tour, petitioner indicated that it was a not-for-profit organization. Respondents however, classified the bike tour as a non-charitable athletic parade as defined in 38 RCNY 19-02 (h), which subjects petitioner to a 100% fee to cover the cost expended by respondent New York City Police Department’s efforts to control traffic (see 38 RCNY 19-05 [c]).
In a proceeding pursuant to CPLR article 78, the scope of judicial review is limited to the issue of whether the administrative action has a rational basis for its determination (see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 230 [1974]). “The arbitrary and capricious test chiefly relates to whether a particular action should have been taken or is justified . . . and whether the administrative action is without foundation in fact. Arbitrary action is without sound basis in reason and is generally taken without regard to the facts.” (Id. at 231 [internal quotation marks and citation omitted].) Deference is usually given to the agency in interpreting the regulations it administers because of its expertise in those matters, and its determination must be upheld as long as it is reasonable (see Matter of Chin v New York City Bd. of Stds. & Appeals, 97 AD3d 485, 487 [1st Dept 2012]). However, when the issue is one of pure statutory interpretation, “deference to the special expertise of the agency” is not required (Matter of City of New York v Commissioner of Labor, 100 AD3d 519, 520 [1st Dept 2012]).
The relevant regulations here are provided for in title 38 of the Rules of the City of New York (RCNY). Pursuant to 38 RCNY 19-02 (h),
*866 “ ‘Non-Charitable Athletic Parade’ shall mean an event designed for public participation, which is competitive and recognizes the achievements of participants, for which a fee is paid to the organizers by individual members of the public to participate. Payments required from participants to participate in the event by organizers shall be considered a fee. Non-Charitable Athletic Parades shall be subject to fees pursuant to § 19-05 (c).”
On the other hand, pursuant to 38 RCNY 19-02 (g), “ ‘Charitable Athletic Parade’ shall mean an event which is open to the public, the organizers of the event charge no fee or only an administrative fee for participation in the event and the proceeds of the event must be donated to a not-for-profit/charitable organization.”
Petitioner presented evidence of its not-for-profit organization status through its filing with the Internal Revenue Service (IRS) as a section 501 (c) (3) organization, and was given a “Public Charity” status. Petitioner offers New York City residents, young and old, educational programs at no cost, and promotes bicycling as an eco-friendly alternative to using motor vehicles. Its bike tour is an event where it energizes New York City residents to promote an environmentally friendly way to get around the five boroughs as well as offering them an athletic and exercising opportunity. It is also an event where petitioner raises money for itself as it is a not-for-profit organization.[1]
Respondents argue that the general registration fee of $86 and the premium “Gran Fondo Giro d’ltalia Five Boro” program fee of $325 more than cover petitioner’s administrative fees. Thus, it does not meet the definition of a charitable athletic parade. In addressing petitioner’s contention that their determination was arbitrary in that other charities were not charged a fee, respondents distinguished petitioner’s fundraising activity with those of other charities such as the Susan G. Komen Race for the Cure, the Avon Walk for Breast Cancer, and Bike MS NYC. While these three charities charge a participation fee, it is modest, and they use their events as a fundraising tool setting fundraising mínimums from $150 to $1,800. Significantly, their fundraising was not used to sustain their own respective organizations, unlike the purpose of the bike tour. As for other parades that went on without being assessed a fee, such as the *867 New York Century Bike Tour, it was because no streets were closed, or the event was small with less than 500 participants, such as with the Harlem Cycling Classic, or they did not apply for a permit, as with the unsanctioned race sponsored by the Red Hook Criterium.
Through respondents’ argument it is evident that the driving force behind their determination that the bike tour is a non-charitable athletic parade under 38 RCNY 19-02 (h) is that the registration fees more than cover petitioner’s administrative fees. However, nowhere in respondents’ argument do they address the other factors under that section, such as the event is “competitive” and “recognizes the achievements of participants” (id.). Unlike the ING New York City Marathon (a non-charitable athletic parade) held every November where elite runners vie for the fastest time to win a sizable monetary prize in the range of $130,000 to $200,000,[2] it appears that in petitioner’s bike tour, every participant is a winner, which hardly makes it competitive; and no monetary prize is awarded. Apparently, respondents’ decision to apply 38 RCNY 19-02 (h) to petitioner is more likely a default from its finding that 38 RCNY 19-02 (g) is inapplicable to it.
In any event, respondents cogently address the rationale for assessing fees for some events, but, what they do not explain is how, for the bike tour, they came to assess a public charity’s allocation of its funds. The critical concerns for meeting the criteria of a noncharitable athletic parade are that the event is opened to the public, which the bike tour is, and it may charge a fee to cover its administrative expense, which it also does, and the proceeds of the event go to a charitable organization, which Bike New York is. There is nothing in 38 RCNY 19-02 that speaks to how a public charity is to allocate its money. Respondents also mentioned that petitioner charges a fee for its classes and therefore petitioner’s claims of providing free classes should be disregarded. However, that goes to petitioner’s operation as a public charity. The authority more appropriate to address that concern along with the concern of how it allocates its funds is the IRS, not the Police Department or the Office of Citywide Event Coordination and Management. As such, *868 respondents’ determination is unreasonable and cannot be confirmed.
Accordingly, respondents’ determination that the bike tour, sponsored by Bike New York is a noncharitable athletic parade as defined in 38 RCNY 19-02 (h) and assessing fees to cover 100% of the cost of estimated traffic control cost is annulled and vacated.

. Bike New York’s mission statement and information on its bike tour can be found on its website at www.bikenewyork.org.

. The ING New York City Marathon was cancelled in 2012 due to “Superstorm’’/Hurricane Sandy (Jeré Longman, Contenders Miss Out on Chance for Big Payday, NY Times, Nov. 3, 2012, available at http://www.nytimes.eom/2012/ll/04/sports/no-nyc-marathon-means-no-prizemoney.html).